# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF MISSISSIPPI
# GREENVILLE DIVISION

**ALSEE MCDANIEL**                                                                  **PLAINTIFF**

**V.**                               **NO. 4:17-CV-99-DMB-JMV**

**CITY OF INDIANOLA, MISSISSIPPI,**
**et al.**                                                               **DEFENDANT**

## MEMORANDUM OPINION AND ORDER

This employment discrimination action is before the Court on the defendants' motion for summary judgment. Doc. #29.

## I
## Summary Judgment Standard

Under Rule 56 of the Federal Rules of Civil Procedure, "[s]ummary judgment is proper only if the pleadings and record materials reveal no genuine issue as to any material fact." *Renwick v. PNK Lake Charles, L.L.C.*, 901 F.3d 605, 611 (5th Cir. 2018). "A material fact is one that might affect the outcome of the suit under governing law, and a fact issue is genuine if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Id.* (quotation marks and citations omitted). In making these determinations, a court "must view the evidence in the light most favorable to the non-moving party, drawing all justifiable inferences in the non-movant's favor." *Id.* (quotation marks and alterations omitted).

"The party moving for summary judgment bears the burden of identifying the portions of the record that demonstrate the absence of a genuine issue of material fact, and the nonmovant must then point to or produce specific facts demonstrating that there is a genuine issue of material fact." *James v. Woods*, 899 F.3d 404, 407 (5th Cir. 2018) (citation omitted). "Where the nonmoving party bears the burden of proof at trial, the moving party satisfies this initial burden by

demonstrating an absence of evidence to support the nonmoving party's case." *Celtic Marine Corp. v. James C. Justice Cos., Inc.*, 760 F.3d 477, 481 (5th Cir. 2014).

## II
## Procedural History

On July 10, 2017, Alsee McDaniel, acting pro se,[1] filed a complaint in this Court against the City of Indianola,[2] Steve Rosenthal, Larry Brown, Gary Fratesi, Ruben Woods, Dana Myrick, and Carver Randle, Jr. Doc. #1. The complaint, without distinguishing between the defendants, alleges a claim of wrongful termination under Title VII of the Civil Rights Act, and a claim of defamation under state law. *Id*. at 2–3. After receiving an extension to respond to the complaint, the defendants filed a joint answer on October 4, 2017. Doc. #8.

Following a period of discovery, the defendants filed a motion for summary judgment on McDaniel's claims. Doc. #29. McDaniel responded in opposition to the motion, and the defendants replied. Doc. #33; Doc. #35.

## III
## Evidentiary Issues

In their initial memorandum, the defendants, apparently expecting the introduction of certain documents, objected on the ground of hearsay to the consideration of newspaper articles in deciding the motion for summary judgment. Doc. #30 at 3. The defendants also raised a hearsay objection to the introduction of affidavit evidence setting forth the "lay opinion of Plaintiff's sister sitting as a concerned citizen at [city] meetings." *Id*.

In response to the motion for summary judgment, McDaniel did not introduce affidavit

---

[1] As explained in more detail below, McDaniel is an attorney and a former municipal court judge. Accordingly, he is not entitled to "the liberal construction of his complaint normally given pro se litigants." *Olivares v. Martin*, 555 F.2d 1192, 1194 n.1 (5th Cir. 1977).

[2] The City of Indianola was listed in the caption of the complaint but not specifically named in the body. The parties do not dispute that the City is a party to this action.

evidence of his sister's opinions.  He did, however, submit two newspaper articles and one editorial.  *See* Docs. #33-3, #33-4, #33-5.  McDaniel argues these documents are admissible because they are self-authenticating and because it is undisputed the editorial was written by Rosenthal, a defendant in this action.  Doc. #34 at 6.

The requirement of authenticity necessitates that the piece of evidence be what it purports to be.  Fed. R. Evid. 901(a).  In contrast, the rule against hearsay asks whether the piece of evidence falls under the general definition of hearsay set forth in Federal Rule of Evidence 801(c) (an out of court statement introduced to prove the truth of the matter asserted), whether the evidence is properly excluded from the definition of hearsay under Rule 801(d), and whether the evidence falls under any of Rule 803's exceptions to the rule against hearsay.  Thus, "authentication is a separate requirement from the hearsay rules."  *United States v. One 1968 Piper Navajo Twin Engine Aircraft*, 594 F.2d 1040, 1042 (5th Cir. 1979).  "Merely because a document is authenticated does not mean it is admissible. It may, for example, need to meet the hearsay requirements if it is offered to prove the truth of the assertions made in it."  *Id*. (citation omitted).

When introduced for the truth of the matter asserted, newspaper articles are "classic, inadmissible hearsay" which may not be used to defeat a motion for summary judgment.  *Roberts v. City of Shreveport*, 397 F.3d 287, 295 (5th Cir. 2005).  There is no dispute that the two articles offered by McDaniel are introduced for the truth of the matter asserted and, therefore, are properly excluded as hearsay.

While newspaper articles are generally considered inadmissible hearsay, admissions of a party opponent are excluded from the definition of hearsay under Federal Rule of Evidence 801(d)(2).  Under this rule, "letters to the editor written [by a defendant] can be considered as admissions."  *Gorski v. Bd. of Trustees of Cmty. Coll. of Dist. No. 504, Cty. of Cook*, 93-c-3918,

1994 WL 395836, at *3 (N.D. Ill. July 25, 1994). Here, the letter to the editor was authored by Rosenthal in his capacity as mayor of the City of Indianola and sets forth specific reasons for McDaniel's termination. *See* Doc. #33-5. The letter, therefore, is not hearsay to the extent it is offered against either Rosenthal or the City.

## IV
## Factual Background

### A. The Parties

Alsee McDaniel, an African American man, graduated from Harvard Law School in 1978. Doc. #29-1 at 4. The same year, McDaniel became licensed to practice law in the State of Mississippi. *Id*.

Steve Rosenthal became the mayor of the City of Indianola, Mississippi, in 2010. Doc. #29-2 at 3–4. At the time Rosenthal became mayor, Howard Davis, a white man, served as the Municipal Court Judge for the City. *Id*. at 38. Due to complaints regarding collections and lax sentences in Davis' court, Rosenthal asked Davis to appear before the City's Board of Aldermen ("Board"). *Id*. at 39. Davis twice appeared before the Board to give "explanations" for the identified deficiencies. *Id*. at 40. Sometime before the end of 2011, and approximately six to eight months after the second of these meetings, Davis resigned. *Id*. at 39.

### B. McDaniel's Employment

Sometime after Davis resigned, Rosenthal submitted a recommendation to the Board that Richard Noble, a white man, be hired for the vacancy created by Davis' departure. Doc. #29-2 at 5. The Board ultimately rejected this recommendation and, sometime in 2011, voted to appoint McDaniel to the vacancy. *Id*. at 5; Doc. #29-1 at 18. At the time, the Board was comprised of five

individuals: Carver Randle, Larry Brown, Gary Fratesi, Dana Myrick, and "Mrs. Jenkins."[3] Doc. #29-2 at 4. Of these five, two were white (Fratesi and Brown) and three were African American (Jenkins, Myrick, and Randle). *Id*. at 4–5.

When McDaniel was hired, the City had more than four million dollars outstanding in uncollected fines. Doc. #29-1 at 57–58. Almost immediately after McDaniel's hire, there were complaints about his collection of fines. *Id*. McDaniel was "called in" to meet with city officials about this issue "a couple of times a year or more." *Id*. at 58. In addition to the issue with fine collections, Rosenthal was concerned about the rate at which McDaniel was continuing cases. Doc. #29-2 at 14–15. Sometime between 2012 and 2014, McDaniel met with Rosenthal and then-Chief of Police Moffett[4] about the continuances "because police officers were having to come back" to court, and Moffett "was frustrated by the overtime that was being generated by that." *Id*. at 15.

In response to the concerns about collection of fines, McDaniel recommended the adoption of a policy regarding the imposition and collection of fines. Doc. #29-1 at 30–32. This policy, which required the payment of a fine prior to the date of trial or the entry of a plea or judgment, went into effect in 2013,[5] and was approved by the Board sometime later.[6] According to Rosenthal, the policy was followed in the court "for two or three weeks in [20]13," and then for approximately six months after the Board approved it. Doc. #29-2 at 43.

At some point after 2014, Moffett was replaced by Richard O'Bannon as the Chief of Police. *Id*. at 15–16. On at least two occasions between 2014 and 2015, Rosenthal and O'Bannon

---

[3] Jenkins' first name is not apparent from the record.

[4] Moffett's first name is not apparent from the record.

[5] *See* Doc. #29-1, at "City of Indianola Municipal Court, Notice of Court Rules Regarding the Payment of Fines and Assessments."

[6] *See* Doc. #29-2 at 43.

discussed McDaniel's use of continuances. *Id*.

## C. McDaniel's Termination and Replacement

On or about October 17, 2016, Teresa Nolden, the City's Municipal Court Clerk, was threatened in open court by a defendant. Doc. #29-6 at ¶ 3. Although McDaniel was "easily within hearing distance of the threat," he took no action. *Id*.

Eight days later, on October 25, 2016, the Board convened a special meeting, which McDaniel attended without invitation. Doc. #29-5; Doc. #29-1 at 41–43. After opening the meeting, the Board went into executive session. Doc. #29-1 at 43. Following the executive session, Fratesi made a motion, seconded by Brown, to terminate McDaniel's employment. Doc. #29-5. When the motion was made, Myrick exited the Board Room without voting. *Id*. Both Fratesi and Brown voted in favor of the motion while Reuben Woods voted in opposition. *Id*. Because a motion to terminate could pass with a quorum and a majority vote,[7] McDaniel was terminated. *Id*. Randle, the fifth member of the Board, was not present for the vote. *Id*; Doc. #29-1 at 44.

According to Rosenthal, McDaniel was terminated for four reasons: (1) the failure to address the threat to the clerk, which Rosenthal called "key" and "the final straw;" (2) the inability to standardize procedures regarding fines; (3) the excessive continuances; and (4) a failure to properly address "activities that were going on in the courts," such as phones ringing in the court and people speaking disrespectfully. Doc. #29-2 at 10–15. In a subsequent letter to the editor published in *The Enterprise-Toscin* on November 3, 2016, Rosenthal defended McDaniel's termination. Doc. #33-5. In the letter, Rosenthal referred to the threat, the fines, court scheduling, and the failure to enforce decorum in court, but also mentioned "[c]onvicted felons given low

---

[7] Doc. #29-2 at 19.

bonds" and "[d]omestic violence cases listed as first offense multiple times because they had been dismissed multiple times." *Id*. Rosenthal also stated, "I feel that had the aldermen taken [the termination] action earlier, Assistant Chief Earnest Gilson's brother might still be alive since the suspect was released less than 10 days before [the] murder." *Id*.

After McDaniel was terminated, Rosenthal was given a list of all licensed attorneys in Sunflower County and was "instructed that the law says that the [next] judge has to live in Sunflower County and be a registered voter for Sunflower County."[8] Doc. #29-2 at 26. Rosenthal contacted every person on the list who met the residency and registration requirement, and asked "if they would be interested in holding that position." *Id*. Rosenthal estimates that he spoke with approximately three-quarters of the people on the list. *Id*. at 30. The remaining quarter of people were contacted by voice-mail, e-mail, letter, or "personal contact." *Id*.

At a subsequent Board meeting, Rosenthal informed the Board that Kuykendall Horne Murry, a white woman, both was qualified for and interested in the position. *Id*. at 29. Murry was later approved by the Board. *Id*. at 25–26.

### D. EEOC Charge and this Action

McDaniel filed a charge of discrimination with the Equal Employment Opportunity Commission and received a notice of right to sue on April 13, 2017. Doc. #1-1. This action followed.

## V
## Analysis

McDaniel's complaint, without distinguishing between the defendants, or the capacities in which the defendants are sued, asserts claims for wrongful termination under Title VII and

---

[8] According to Rosenthal, the City Attorney said this advice was based on an Attorney General's opinion. Doc. #29-2 at 26.

defamation. Doc. #1. However, in his deposition, McDaniel clarified that the defamation claim is brought only against Rosenthal, and that the Title VII claim is brought against only the individual defendants in their official capacities and against the City. Doc. #29-1 at 13–14. The defendants have moved for summary judgment on these claims.

### A. Title VII

"Title VII prohibits discrimination 'because of' a protected characteristic, including race." *Outley v. Luke & Assocs., Inc.*, 840 F.3d 212, 216 (5th Cir. 2016). "Title VII plaintiffs may prove a racial discrimination claim either by direct or circumstantial evidence." *Stroy v. Gibson ex rel. Dep't of Veterans Affairs*, 896 F.3d 693, 698 (5th Cir. 2018).

#### 1. Direct evidence

"In the context of Title VII, direct evidence includes any statement or written document showing a discriminatory motive on its face." *Herster v. Bd. of Supervisors of La. State Univ.*, 887 F.3d 177, 185 (5th Cir. 2018) (citation omitted). To satisfy this standard, the evidence, if believed, must "prove[] the fact of discriminatory animus without inference or presumption." *Rachid v. Jack in the Box*, 376 F.3d 305, 310 n.6 (5th Cir. 2004) (citation omitted). In opposing summary judgment, McDaniel offers two statements as direct evidence of discrimination: (1) a question asked by Brown during a Board meeting whether the African American aldermen would hire a white candidate; and (2) a statement attributed to Woods that "something had been decided before the meeting." Doc. #34 at 5.

As an initial matter, McDaniel has offered no admissible evidence that these statements were made. "Hearsay evidence inadmissible at trial cannot be used to create a genuine issue of material fact to avoid summary judgment." *Harris ex rel. Harris v. Pontotoc Cty. Sch. Dist.*, 635 F.3d 685, 692 (5th Cir. 2011). It appears McDaniel learned of Woods' alleged statement from his

8

sister, and of Brown's alleged statement from a newspaper article. *See* Doc. #29-1 at 26, 53. Insofar as both his sister's statement and the newspaper article are inadmissible hearsay, they may not defeat summary judgment.

Even if the statements were properly before the Court, they would not satisfy the direct evidence requirement because both require an inference or presumption to establish discriminatory animus. Woods' alleged statement requires an inference that the supporters of the termination reached their decision before the meeting *because* of racial animus rather than the previously identified complaints regarding McDaniel. Brown's alleged statement requires an inference that he inquired regarding the African American aldermen's willingness to hire a white judge because he wanted to hire a white judge rather than because he wanted to know whether the African American aldermen themselves were biased. Accordingly, the Court concludes that McDaniel has failed to introduce direct evidence of discrimination.

### 2. Circumstantial evidence

In the absence of direct evidence of discrimination, this Court evaluates McDaniel's race discrimination claim under the *McDonnell-Douglas* burden shifting framework. *Stroy*, 896 F.3d at 698.

> Under the McDonnell Douglas framework, the plaintiff must first make out a prima facie case for race discrimination, by showing that he (1) is a member of a protected group; (2) was qualified for the position at issue; (3) was discharged or suffered some adverse employment action by the employer; and (4) was replaced by someone outside his protected group or was treated less favorably than other similarly situated employees outside the protected group. If the plaintiff makes this showing, the burden then shifts to the employer to set forth some legitimate, non-discriminatory reason for its decision.

*Id*. at 698–99 (quotation marks and alterations omitted). Once the employer offers a legitimate, non-discriminatory reason, the burden shifts back to the plaintiff to "produce substantial evidence indicating that the proffered legitimate, nondiscriminatory reason is a pretext for discrimination."

*Outley*, 840 F.3d at 216.

### a. Prima facie

There is no dispute that McDaniel—who is African American, was indisputably qualified for the position of charge, was terminated, and was replaced by a white person—has made out a prima facie case for race discrimination.[9]

### b. Legitimate, nondiscriminatory reason

At the second step, "the employer must produce evidence of a legitimate, nondiscriminatory reason for the adverse employment action, apart from the inferred discriminatory reason." *Heinsohn v. Carabin & Shaw, P.C.*, 832 F.3d 224, 236 (5th Cir. 2016). At this step, the employer's "burden is one of production, not persuasion … as to its legitimate, nondiscriminatory reason." *Id*. To satisfy this burden, the employer "must clearly set forth, through the introduction of admissible evidence, the reasons for the adverse employment action." *Id*. Such reason must be presented "with sufficient clarity to afford the employee a realistic opportunity to show that the reason is pretextual." *Burton v. Freescale Semiconductor, Inc.*, 798 F.3d 222, 231 (5th Cir. 2015) (quoting *Patrick v. Ridge*, 394 F.3d 311, 317 (5th Cir. 2004) (internal quotation marks and emphasis omitted)). While "the employer need not prove that it was actually motivated by its proffered reason," *Patrick*, 394 F.3d at 315; the proffered evidence must "give [a] reason for [the decision maker's] decisions at the time that he made those decisions," *Turner v. Kans. City S. Ry. Co.*, 675 F.3d 887, 904 (5th Cir. 2012).

With regard to the second step, the defendants argue that McDaniel was terminated due to issues related to "the efficiency and effectiveness" of the Municipal Court. Doc. #30 at 18.

---

[9] The defendants concede that "McDaniel appears to satisfy his initial burden" but argue "the clearly neutral hiring process detailed by testimony is relevant." Doc. #30 at 16. The defendants, however, offer no authority or argument in support of their assertion that a "clearly neutral hiring process" can defeat a plaintiff's prima facie case. This Court is unaware of any such authority.

Specifically, the defendants contend that McDaniel was terminated because he failed to address the threat made against his clerk, failed to control his courtroom generally, granted excessive continuances, and failed to implement rules regarding fines. *See id*. at 5.

McDaniel argues these reasons cannot satisfy the defendants' second-step burden because "no documents were used as evidence in the termination" and because he had discretion to continue cases and impose fines. Doc. #34 at 4–5. McDaniel does not address his failure to respond to the threat to the clerk but states in an affidavit that he did not hear the threatening remark. Doc. #33-1 at ¶ 2.

First, the absence of documentary evidence has absolutely no bearing on whether the reasons offered by the defendants are legitimate. Second, while it is undisputed that McDaniel had discretion to run his court, the defendants' position is that McDaniel was terminated because he was exercising his discretion in such a way as to unnecessarily prolong cases, disrupt the schedules of officers, and leave fines uncollected. That McDaniel was legally entitled to run his courtroom in such a way does not render the defendants' proffered reasons illegitimate. *See generally Hughley v. Upson Cty. Bd. of Commr's*, 696 F. App'x 932, 936 (11th Cir. 2017) ("Hughley alleged a legitimate, nondiscriminatory reason in his complaint. Hughley alleged that he was fired from his position because he refused to allow the police officer in his courtroom to obtain warrants, which upset the Judges because that increased their workload.") (quotation marks and alterations omitted). Finally, whether McDaniel actually heard the threat does not mean that he was not terminated for failing to respond to the threat. Accordingly, the Court concludes that the defendants have satisfied their second-step burden.

c. Pretext

At the third step, the burden shifts back to the plaintiff "to produce substantial evidence

indicating that the proffered legitimate nondiscriminatory reason is a pretext for discrimination." *Outley*, 840 F.3d at 218. To this end, "[a] plaintiff may establish pretext either through evidence of disparate treatment or by showing that the employer's proffered explanation is false or unworthy of credence." *Id*.

In arguing pretext, McDaniel points only to the alleged statements of Brown and Woods which he argues were direct evidence of discrimination. *See* Doc. #34 at 5–6. Additionally, although not phrased as an argument related to pretext, McDaniel's brief includes in its statement of facts the statement that "[a]lthough issues regarding fine collections and handling of cases by the court were raised to the former city judge, a Caucasian male, the defendants never took any action against him." Doc. #34 at 2.

"Disparate treatment occurs where an employer treats one employee more harshly than other similarly situated employees for nearly identical conduct." *Vaughn v. Woodforest Bank*, 665 F.3d 632, 637 (5th Cir. 2011) (quotation marks omitted). Of relevance here, "[t]he conduct at issue is not nearly identical when the difference between the plaintiff's conduct and that of those alleged to be similarly situated account for the difference in treatment received from the employer." *Wallace v. Methodist Hosp. Sys.*, 271 F.3d 212, 221 (5th Cir. 2001). Here, while Davis, the former judge, apparently failed to collect fines at a proper rate, there is no evidence he failed to address a threat to a court employee, the act which is said to have precipitated McDaniel's termination. There is also no evidence Davis was criticized for excessive continuances. In the absence of such evidence, McDaniel cannot show Davis engaged in "nearly identical" conduct so as to show disparate treatment.

Finally, as explained above, there is no admissible evidence the statements attributed to Brown and Woods were actually made. Accordingly, these statements may not satisfy McDaniel's

12

pretext burden and, therefore, summary judgment on McDaniel's Title VII claim is warranted.

## B. Defamation

Having determined that McDaniel's federal claims must be dismissed, no federal question remains before the Court. In this situation, where no diversity jurisdiction is present,[10] the court must exercise its discretion on whether to exercise supplemental jurisdiction over McDaniel's defamation claim under 28 U.S.C. § 1367(c)(3). *See Heggemeir v. Caldwell Cty.*, 826 F.3d 861, 872 (5th Cir. 2016). To this end, the supplemental jurisdiction statute, 28 U.S.C. § 1367, provides:

> The district courts may decline to exercise supplemental jurisdiction ... [if] (1) the claim raises a novel or complex issue of State law, (2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction, (3) the district court has dismissed all claims over which it has original jurisdiction, or (4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction.

28 U.S.C. § 1367(c). Courts in the Fifth Circuit treat the four circumstances enumerated in § 1367 as "statutory factors" to consider when evaluating supplemental jurisdiction. *Enochs v. Lampasas Cty.*, 641 F.3d 155, 159 (5th Cir. 2011). "The general rule is that a court should decline to exercise jurisdiction over remaining state-law claims when all federal-law claims are eliminated before trial." *Watson v. City of Allen*, 821 F.3d 634, 642 (5th Cir. 2016).

McDaniel's defamation claim involves complex issues of state law, most notably the extent to which a public official such as Rosenthal may be held liable for defamation when discussing a second public official such as McDaniel. The second statutory factor weighs against the exercise of supplemental jurisdiction because the state law claims predominate over the now non-existent federal law claims. The third statutory factor weighs in favor of dismissal because the federal claim will be dismissed by this order.

---

[10] There is no dispute that complete diversity is not present in this action.

The fourth factor, which incorporates the "common law factors [of] judicial economy, convenience, fairness, and comity,"[11] also favors dismissal as the heavy balance of the common law factors weigh in favor of dismissal. Specifically, the judicial economy factor weighs against jurisdiction because "at the time the federal claims were deleted hardly any federal judicial resources, let alone a significant amount of resources, had been devoted to the … consideration of the … state law claims (or to any claims)." *Enochs*, 641 F.3d at 159. The third common law factor also weighs against this Court's exercise of jurisdiction because there is no indication of prejudice resulting from dismissal and "it [is] certainly fair to have … the purely … state law claims heard in … state court…" *Id*. at 160. Finally, insofar as federal courts are "not as well equipped for determinations of state law as are state courts," the fourth common law factor of comity is served by declining jurisdiction. *Id*.; *see Diaz v. Estate of Lampton*, No. 3:09-cv-324, 2013 WL 3213087, at *16 (S.D. Miss. June 26, 2013) (dismissing state law claims "without prejudice so that a state court of competent jurisdiction may resolve them").

Upon consideration of the statutory and common law factors, the Court will decline to exercise supplemental jurisdiction over McDaniel's defamation claim.

## VI
## Conclusion

For the reasons above, the defendants' motion for summary judgment [29] is **GRANTED in Part and DENIED in Part**. The motion is GRANTED to the extent it seeks summary judgment against McDaniel's Title VII claim. The motion is DENIED to the extent it seeks summary judgment against McDaniel's state law defamation claim brought against Rosenthal; such claim is **DISMISSED without prejudice** for lack of jurisdiction. A final judgment consistent with this

---

[11] *Enochs*, 641 F.3d at 159 ("The fourth factor also favors remand, as the heavy balance of the common law factors in favor of remand constitutes another compelling reason to decline jurisdiction.").

opinion will issue separately.

**SO ORDERED**, this 10th day of October, 2018.

/s/Debra M. Brown
**UNITED STATES DISTRICT JUDGE**